James E. CRAWFORD, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

WESTERN ELECTRIC COMPANY, INC., et al., Defendants-Appellees, Cross-Appellants.

No. 82–3119.

United States Court of Appeals, Eleventh Circuit.

Nov. 5, 1984.

Rehearing and Rehearing En Banc Denied Dec. 19, 1984.

Reese Marshall, Algia R. Cooper, Jacksonville, Fla., for plaintiffs-appellants, cross-appellees.

Guy O. Farmer, II, Gavin S. Appleby, Jacksonville, Fla., for defendants-appellees, cross-appellants.

Before FAY, VANCE and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this employment discrimination case, we review the district court's finding that appellee, Western Electric Company, Inc., rebutted appellants' prima facie cases under 42 U.S.C.A. § 1981 (West 1981) and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–17 (West 1981). We also review the district court's holding that four appellants prevailed on their discrimination claims. We affirm in part and reverse in part.

*Facts*

On June 2, 1975, eight black installers, James E. Crawford, Royce B. Crump, Hubie C. Dupree, Larry Hodge, Fred J. Smith, Ernest L. Higginbotham, Lawrence I. Tunsil, and Frank McKinney, at the Jacksonville Installation Division of Western Electric Company, Inc. (Western Electric), filed a class action suit against their employer, Western Electric, and their union, The Communication Workers of America and its Local 3290. The installers alleged that Western Electric had violated their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–17 (West 1981) and 42 U.S.C.A. § 1981 (West 1981).

Prior to trial, the class allegations were dismissed. The installers (appellants) thereafter amended their complaint to add A.C. Bartley, Roger Burton, Philip A. Cue, Saul L. Hodge, Wilbert J. Newsom, Wilbert A. Wingard, and Rodney B. Wright as plaintiffs.

At trial, the district court resolved the individual claims of appellants in favor of Western Electric. Following the district court's decision, appellants appealed to the former Fifth Circuit Court of Appeals, 614 F.2d 1300. The Fifth Circuit affirmed in part, reversed in part, and remanded a number of issues for further consideration. *See Crawford v. Western Electric*, 614 F.2d 1300 (5th Cir.1980).

In *Crawford*, the court found that all appellants except Cue and McKinney had established prima facie cases under 42 U.S.C.A. § 1981 with regard to the Index Review System. The appellants demonstrat-

ed that their advancement rates, within the limitation period, were significantly slower than the average white installer. The court also examined evidence of appellants' past lack of promotion and of racial language and conduct.

The court held that appellants Dupree, Smith, L. Hodge, and Tunsil established prima facie violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–17, by showing that the index review process had a disparate impact on blacks. The court concluded that the district court had relied on erroneous factors in its implied finding that Western Electric rebutted the plaintiffs' prima facie cases. The court then remanded the case to the district court and instructed it to determine whether other evidence sufficiently rebutted appellants' showing.

In sum, the *Crawford* court conclusively ruled that thirteen of the original fifteen plaintiffs had established prima facie cases of discrimination under section 1981, and that four of the thirteen had similarly established a prima facie case of discrimination under Title VII. On remand, the district court found that Western Electric rebutted the prima facie cases of nine of the thirteen appellants by establishing legitimate, non-discriminatory reasons for their failure to progress through the Index Review System at a faster pace.

The nine non-prevailing appellants, Bartley, Crawford, Dupree, Higginbotham, L. Hodge, S. Hodge, Newsom, Tunsil, and Wright, appeal. Western Electric appeals the district court's ruling that four of the section 1981 appellants, Burton, Crump, Smith, and Wingard prevailed.

### Issues

We must decide three issues: (1) whether the district court erred when it found that Western Electric offered legitimate, non-discriminatory reasons for not promoting appellants; (2) whether the district court erred in holding that Western Electric met its burden of showing that the Index Review program was justified by business necessity; and (3) whether the district

court erred in finding that four appellants prevailed on their discrimination claims.

### Discussion

In *Crawford,* the former Fifth Circuit found that all of the appellants in this appeal established prima facie violations of section 1981. As the district court correctly noted, the *Crawford* opinion, represents the "law of the case." *See Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir.1978). In resolving the issues in this case, the district court also correctly stated that *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), controlled.

*Burdine* expressly delineated the burdens of proof and production in disparate treatment actions under Title VII. This court has held that the same trial procedure used in Title VII suits may be used in section 1981 disparate treatment cases. *McWilliams v. Escambia County School Board,* 658 F.2d 326 (5th Cir. Unit B 1981); *Baldwin v. Birmingham Board of Education,* 648 F.2d 950, 954–55 (5th Cir.1981) (section 1981 case). Furthermore, in *McWilliams,* this court expressly recognized that *Burdine* principles affect section 1981 employment discrimination cases to the same degree that they affect Title VII cases. *McWilliams,* 658 F.2d at 332.

In order to prove racially discriminatory treatment in violation of Title VII or section 1981, the plaintiff-employee bears the initial burden of establishing a prima facie case of racial discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). By establishing a prima facie case, the employee raises the presumption that the employer rejected him or preferred the other applicant on racially discriminatory grounds. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The former Fifth Circuit found that all appellants in this appeal established a prima facie case of racial discrimination. Thus, appellants

gracefully shouldered their initial burden. *See Crawford*, 614 F.2d at 1318.

■ After a prima facie case is established, the burden of production shifts to the employer to rebut the presumption of discrimination. In carrying its burden of production, the employer must articulate in a reasonably specific manner the legitimate, non-discriminatory reasons for rejecting the black or for preferring the white. *Burdine*, 450 U.S. at 255, 258, 101 S.Ct. at 1094, 1096. The employer, however, is not required to convince the district court that it was actually motivated by the reasons advanced. This is due to the fact that the employer bears only the burden of production, not the burden of persuasion. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. Additionally, the employer need not prove that the hired or promoted white was more qualified than the rejected black. *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096.

Having established a standard of proof in disparate treatment cases brought under both 42 U.S.C.A. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–17, we now address each appellant's claim that the district court erred in finding that Western Electric offered legitimate, non-discriminatory reasons for not promoting him. We also address Western Electric's claim that the district court erred in finding that Burton, Crump, Smith, and Wingard (appellees) prevailed on their discrimination claims.

I. Section 1981 Appellants and Appellees

Appellants (installers) contend that the trial court clearly erred in finding that Western Electric rebutted their prima facie cases of discrimination. The district court's factual finding that Western Electric met its burden of production on this issue may be overturned by this court only if clearly erroneous. Fed.R.Civ.P. 52. Under this standard, the district court's factual findings must be allowed to stand unless the reviewing court is left with a definite and firm impression that a mistake has been made. *American National Bank of Jacksonville v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1533–34 (11th Cir. 1983).

Our task, therefore, is to examine independently the merits of appellants' allegations. In doing so, we have studied the record to determine whether the district court's ultimate finding is based on requisite supporting evidence. *East v. Romine, Inc.*, 518 F.2d 332, 339 (5th Cir.1975).

*Background*

According to procedures at Western Electric, appellants could have been promoted during any one of Western Electric's index reviews, whether a vacancy existed or not. Index reviews for promotions were conducted every six months, in June and December. It was during these index reviews that promotional decisions were made. Only the installers' work performance during the review period in question served as a basis for an advanced rating or the denial of an advanced rating.

On April 8, 1980, the former Fifth Circuit held that the section 1981 appellants, in presenting their employment discrimination cases against Western Electric, established prima facie violations under 42 U.S.C.A. § 1981 (West 1981). We accept this finding as the law of the case, and it will not be relitigated before this court. *See Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978).

With these background facts in mind, we turn to the second step of the *Burdine* analysis which required the employer, Western Electric, to "articulate a legitimate, non-discriminatory reason" for not promoting appellants.

A. Rodney B. Wright

Appellant Wright is an Index 4 installer who, according to the Fifth Circuit's model, should have qualified for an Index 5 rating in October, 1970. The district court found that Western Electric, through the testimony of one of its suborbit supervisors, W.E. McLanahan, articulated a legitimate, non-discriminatory reason for not advancing Wright to an Index 5 position. We must determine whether this finding is clearly

erroneous. *See Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also* Fed.R. Civ.P. 52(a).

The record reveals that the first index review, within the statute of limitations, at which Wright was presumably discriminated against occurred in June, 1975. In an effort to rebut Wright's prima facie case of discrimination, Western Electric submitted the testimony of McLanahan, a suborbit supervisor for the company.

In June, 1977, McLanahan testified that Wright had been under his supervision "for the last year and a half" and under his direct supervision for the last three months. McLanahan stated that Wright had trouble completing a complex, broad-in-scope type job during the end of 1973 or the beginning of 1974. McLanahan asserted that at the time of trial, Wright was not able to perform "broad-in-scope" type jobs, which is one of the requirements for promotion to an Index 5 position.

Wright contends that no evidence exists that the proffered reasons were actually relied upon or considered at the time of the June, 1975, index review. Wright, therefore, asserts that this evidence is insufficient to rebut his prima facie case. The *Burdine* Court adequately answered this contention when it stated, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. Nevertheless, the employer's legitimate, non-discriminatory reasons must be directed to the period of time relevant to the June, 1975, index review session in which the decision was made not to advance Wright. Because promotional decisions were made in June and December, we direct our examination to the six-month period immediately prior to the June, 1975, index review session.

■ In satisfying its burden of production, the employer's explanation of its legitimate reasons must be clear and reasonably specific. *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. A review of the record shows that Western Electric has failed to articulate a clear and reasonably specific reason to justify its employment decision not to advance Wright. This finding is made, in part, on Western Electric's own testimony that only the six-month period under review is relevant to a decision to advance an employee from one index to another. Consequently, Western Electric's testimony concerning events occurring in 1977 and other incidents which occurred long before the relevant review period are legally insufficient to rebut Wright's prima facie case.

Accordingly, we hold that the district court erred in finding that Western Electric articulated legitimate, non-discriminatory reasons for not advancing Wright; Western Electric articulated no legally sufficient reasons for its failure to advance Wright at the June, 1975, index review.

### B. S. Hodge

S. Hodge was an Index 4 installer. The first index review, within the statute of limitations, at which Hodge was presumably discriminated against also occurred in June, 1975. The district court found that Western Electric met its burden of production by articulating legitimate, non-discriminatory reasons for not promoting Hodge, through the testimony of C.M. Wellborn, a line supervisor, and R.I. Lambright, a suborbit supervisor. Hodge contends that this finding is clearly erroneous.

At trial, Wellborn testified that Hodge's work habits in 1976 were below average. Lambright testified that he supervised Hodge "off and on" since 1971 and that during that time, Hodge advanced from Index 2 to Index 4. Lambright emphasized Hodge's failure to accept training on a sophisticated electronic system in 1976. Hodge correctly asserts that his work hab-

its occurring *after* the June, 1975, index review, are legally insufficient to rebut his prima facie case of discrimination.

We conclude that Western Electric's burden of articulating a legitimate, non-discriminatory reason for its employment decision was not met by proffering testimony of incidents occurring after the decision was made not to advance Hodge. Furthermore, Lambright's testimony concerning his "off and on" supervision of Hodge since 1971 does not satisfy the Supreme Court's mandate that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. Based on Lambright's testimony, it is difficult to discern whether his "off and on" supervision of Hodge was "on" during a period of time relevant to the June, 1975, index review. Such testimony is not clear and reasonably specific.

After a review of the evidence, we are left with a definite and firm conviction that a mistake has been committed with regard to appellant, S. Hodge. *United States Gypsum Co.,* 333 U.S. at 395, 68 S.Ct. at 541. We base this conclusion on the fact that the district court accepted, as legally sufficient, testimony about Hodge's work habits occurring after the June, 1975, index review, combined with non-time specific testimony of an "off and on" supervisor— as legitimate, non-discriminatory reasons for Western Electric's decision not to advance Hodge from Index 4 to Index 5. We hold that the district court's finding that Western Electric rebutted S. Hodge's prima facie case is clearly erroneous.

### C. W.L. Newsom

W.L. Newsom is an Index 3 installer. The statute of limitations applicable to his claim bars causes of actions accruing prior to May 24, 1975. The first index review, within the statute of limitations, at which Newsom was presumably discriminated against occurred in June, 1975. In an effort to rebut Newsom's prima facie case of discrimination, Western Electric proffered the testimony of R.I. Lambright,

a supervisor for the company. Lambright testified that Newsom had worked for him "off and on since 1971," that Newsom was qualified as an Index 3 installer, but that Newsom had considerable problems in performing complex wiring jobs efficiently. Lambright also stated that the more difficult the job, the harder time Newsom seemed to have reading the drawings and understanding the T-drawing. Lambright concluded that Newsom appeared to have no knowledge of schematics.

At first blush, these reasons seem to satisfy Western Electric's burden of production. Nevertheless, careful scrutiny reveals that general non-time specific testimony concerning employees' inefficiency does not satisfy the Supreme Court's command that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096.

Western Electric has not articulated a legitimate, non-discriminatory reason for its decision not to advance Newsom based on Newsom's performance or attitude during the six-month period immediately preceding the June, 1975, index review session. Western Electric may not rely on events occurring after the June, 1975, index review; nor may it rely on general "off and on" testimony not tailored to the relevant period of evaluation.

Because Western Electric's evidence, with regard to Newsom, is not clear and reasonably specific and is not directed to the relevant June, 1975, review period, we conclude that this evidence is legally insufficient to satisfy Western Electric's burden of production. After a review of Lambright's testimony concerning his "off and on" supervision of Newsom, we are left with a definite and firm conviction that a mistake has been committed. *United States Gypsum Co.,* 333 U.S. at 395, 68 S.Ct. at 541. We conclude that the district court erred in finding that Western Electric's testimony was legally sufficient to rebut Newsom's prima facie case.

#### D. A.C. Bartley

Bartley is an Index 3 installer. The statute of limitations applicable to his claim bars causes of action accruing prior to May 24, 1975. The June, 1975, index review was the first index review, within the statute of limitations, at which Bartley was presumably discriminated against.

To rebut Bartley's prima facie case of discrimination, Western Electric presented the testimony of Lambright and H.R. Boggs, supervisors for the company. Lambright testified that Bartley was presently, in 1977, working under his supervision and appeared to have difficulty comprehending methods of complex wiring. Boggs testified that he worked with Bartley "in the early 70's, 72, 71, somewhere along in there." Boggs further testified that Bartley's work for him, on one job, was not satisfactory. Boggs stated that Bartley was transferred, and he did not "see Mr. Bartley but very few times off and on during the years." Last, Boggs testified that during the latter part of 1976, in November or December, Bartley's overall wiring was average, but Bartley had trouble following instructions to the letter.

■ Testimony concerning incidents occurring in 1971 and 1972, coupled with testimony about incidents occurring in 1977, may not be relied upon by Western Electric who is charged with the burden of producing admissible evidence of a legitimate, non-discriminatory reason for its failure to advance Bartley in June, 1975. Such evidence is not clear and specifically directed to Bartley's performance and attitude six months before the index review at which Bartley was presumably discriminated against.

Because Western Electric introduced no relevant evidence showing a legitimate, non-discriminatory reason for its action during the June, 1975, index review period, we conclude that the district court's finding that Western Electric rebutted Bartley's prima facie case of discrimination is clearly erroneous.

#### E. Appellee Roger J. Burton

■ At trial, Western Electric attempted to rebut Roger J. Burton's prima facie case of discrimination. The district court concluded that the testimony of company supervisors provided no specific information to explain Burton's slow progress through the index review system. After reviewing all the evidence proffered by Western Electric, the district court found that the proffered evidence was insufficient to rebut Burton's prima facie case. Western Electric contends that this finding is clearly erroneous.

After a review of the record, we are not left with a firm and definite conviction that a mistake has been made. *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 541. We hold that the district court's finding is amply supported by the record and, thus, is not clearly erroneous. We reject Western Electric's arguments to the contrary.

#### F. Appellee W.L. Wingard

■ W.L. Wingard is an Index 3 installer. The statute of limitations applicable to his claim bars causes of action occurring prior to May 24, 1975. The first index review, within the statute of limitations, at which Wingard was presumably discriminated against occurred in June, 1975. Herbert R. Boggs testified that in 1974 he supervised Wingard, in Tampa, Florida. Boggs stated that Wingard did an outstanding job on the cabling, and that the quality of Wingard's wiring and production was very good. Boggs further testified that Wingard did "a very outstanding job" or "a very good job" on other work operations.

After reviewing all of the evidence, the district court concluded that the evidence lacked negative comment with respect to Wingard. The court found that Western Electric's rebuttal did not provide clear evidence of a legitimate, non-discriminatory reason for Western Electric's failure to advance Wingard. Western Electric claims that this finding is clearly erroneous and, therefore should be vacated. We disagree.

Examination of the record reveals substantial evidence that supports the district court's finding that Western Electric failed to rebut Wingard's case. The district court correctly concluded that Wingard was entitled to prevail on his section 1981 discrimination claim.

### G. Appellee R.B. Crump

Crump is an Index 3 installer, and the statute of limitations applicable to his claim bars causes of action accruing prior to January, 1974. The first index review, within the statute of limitations, at which Crump was presumably discriminated against occurred in June, 1974. According to the Fifth Circuit's model, Crump should have qualified for an Index 4 position in October, 1974, and for an Index 5 position in October, 1975.

■ In an effort to rebut Crump's prima facie case of discrimination, Supervisors Wellborn, Boggs, and Lambright testified. Wellborn testified that he supervised Crump in March, 1976, through the first part of May, 1976, and that Crump's performance was average. Wellborn further stated that he supervised Crump during November and December, 1976, and part of January, 1977. He admitted that at times, Crump performed above average. In Wellborn's words, Crump "excelled." Boggs testified that he supervised Crump in October, November, and December, 1976. Boggs stated that during this time he noticed that "Crump had so much cable piled up at the top of the frame that they couldn't get the covers on." Boggs, however, admits that some problems existed in that area that "might not have been all his fault." Lambright testified that Crump worked for him in 1977 and that Crump's work was average in production, but his quality lagged "just a little bit, almost all of the time." The district court found that this nominal criticism of Crump did not provide a clear explanation of Crump's failure to progress through the index system.

Western Electric contends that the district court's finding is clearly erroneous. After reviewing the record, we conclude that none of Western Electric's evidence specifically relates to the June, 1974, index review period when Crump was first presumably discriminated against. The district court correctly concluded that Western Electric's proffered testimony was legally insufficient to rebut Crump's prima facie section 1981 claim. This finding is fully supported, and it is not clearly erroneous.

### H. Ernest I. Higginbotham

Higginbotham is an Index 2 installer. The statute of limitations applicable to his claim bars causes of action materializing prior to January, 1974. The first index review, within the statute of limitations, at which Higginbotham was presumably discriminated against occurred in June, 1974.

■ To rebut Higginbotham's prima facie case of discrimination, Western Electric proffered testimony from Supervisors McLanahan and Wellborn. Wellborn's testimony covered events occurring in 1975 and 1976, after the June, 1974, index review. This after-the-fact justification is legally insufficient to rebut Higginbotham's prima facie case. McLanahan testified that he supervised Higginbotham throughout "most of his career." From McLanahan's testimony, it is unclear whether the six-month period of time immediately preceding the June, 1974, index review is included in the time period about which McLanahan speaks. McLanahan's testimony, therefore, is not clear and reasonably specific with regard to the June, 1974, index review. *See Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. At best, this court is left to speculation as to whether "most of his career" included the first relevant index review at which Higginbotham was presumably discriminated against. As a result, we are also left with a firm and definite conviction that a mistake has been committed. *Id.* Accordingly, we hold that the district court erred in finding that Western Electric rebutted Higginbotham's prima facie case of discrimination.

### I. Hubie C. Dupree

Dupree, an Index 3 installer, is a Title VII and section 1981 claimant. Based on the Fifth Circuit's model, Dupree should have qualified for an Index 4 position in October, 1973, and an Index 5 position in October, 1974. The statute of limitations applicable to Dupree's claims bars causes of action accruing prior to September 9, 1972. The first index review, within the statute of limitations, at which Dupree was presumably discriminated against occurred in December, 1972.

In an effort to rebut Dupree's prima facie case of discrimination, McLanahan testified that "[h]e worked for me most of his entire career ...." McLanahan stated that Dupree was a good wireman. He also stated that Dupree's quality and production were average and sometimes above average. McLanahan testified that Dupree resented any type of counseling, could not work without specific directions, and had very little mechanical ability. He concluded that Dupree had "an attitude problem." Wellborn added that he supervised Dupree in 1973 or 1974 and that at that time, Dupree's iron and wiring work were average to above average, but that Dupree had some trouble in testing. Another supervisor, Boggs, testified that he supervised Dupree in 1974 and had no particular problem with Dupree's work, but Dupree was continually late returning from breaks and lunch.

The district court correctly concluded that this testimony when taken together provides a legitimate, non-discriminatory reason for Dupree's slow progress through the Index Review System in 1973 and 1974. We hold that Western Electric effectively rebutted Dupree's prima facie case.

### J. Larry Hodge

Larry Hodge, an Index 3 installer, was discharged in October, 1975. He is a section 1981 and Title VII claimant. He had worked for Western Electric from February, 1968. Based on the Fifth Circuit's model, Hodge should have qualified for an Index 4 position in June, 1973, and an In-dex 5 position in June, 1974. The statute of limitations relevant to Hodge's claim bars causes of action accruing before September 9, 1972. The first index review, within the statute of limitations, at which Hodge was presumably discriminated against occurred in December, 1974.

On behalf of Western Electric, Lambright, a company supervisor, testified that Hodge worked under his supervision since 1971 and that one day Hodge would do a good job and, the next day, "it might just be the opposite. Everything he may do just may be wrong." Lambright stated that in 1974, Hodge had an absentee problem and as a result received a number of informal and formal warnings under the company's absentee program. After giving Hodge numerous warnings as required by the absentee program, Western Electric discharged Hodge. The district court correctly concluded that the 1974 absences and Hodge's varied work performance provide a legitimate, non-discriminatory reason for Western Electric's failure to advance Hodge. After reviewing the record, we find clear and time-specific reasons for Hodge's non-advancement at the December, 1974, index review session. Finding no error, we affirm the district court's holding that Western Electric effectively rebutted Hodge's prima facie case of discrimination.

### K. Appellee Fred J. Smith

Smith is an Index 3 installer. The statute of limitations relevant to Smith's claim bars causes of action accruing prior to September 9, 1972. The first index review, within the statute of limitations, at which Smith was presumably discriminated against occurred in December, 1972.

On Western Electric's behalf, McLanahan testified that he supervised Smith somewhere in the area of 1976 or 1975. He emphasized that Smith did an outstanding wire job without any errors; Smith, however, was unable to test the work completed. McLanahan testified that most Index 4 installers could test complet-

ed work of this type with "hardly any problems." Next, Boggs testified that he supervised Smith in the early 1970's and at that time, Smith had "some quality problems with his wiring." Boggs added that he worked with Smith again in mid-1976, and Smith's work was average or better. The district court viewed these facts and the fact that Smith's Installer Performance Appraisal reflected favorably on Smith's ability, and concluded that Smith's prima facie case had not been rebutted. After the same, the district court held that Smith was entitled to recover under both his section 1981 and his Title VII claims for disparate treatment under the Index Review System. Western Electric has not convinced us that the district court's finding is clearly erroneous.

### L. Lawrence Tunsil

Tunsil, an Index 3 installer, is a Title VII and section 1981 claimant. The relevant statute of limitations bars causes of action accruing prior to September 9, 1972. The first index review within the statute of limitations at which Tunsil was presumably discriminated against occurred in December, 1972.

 McLanahan testified that Tunsil had been under his supervision indirectly for approximately 80% of Tunsil's career with Western Electric. He stated that Tunsil needed constant supervision to keep him at his work location and that Tunsil's wiring ability was marginal. McLanahan further stated that Tunsil's production was average, but that his quality was very poor at times. Last, McLanahan testified that Tunsil had trouble applying knowledge from his head to his hands. Boggs testified that he supervised Tunsil in the early 1970's on a job assignment which involved a complex wiring project. According to Boggs, Tunsil was unable to competently perform the task and, therefore, made over fifty wiring errors during the course of the project. Boggs further testified that he observed other supervisors having trouble keeping Tunsil at his work locations.

The district court expressly stated that the testimony presented by Western Electric related closely to Tunsil's ability and his attitude. Thereafter, the district court found that the company's evidence provided a legitimate, non-discriminatory explanation for Tunsil's slow advancement. The district court concluded that this evidence rebutted Tunsil's prima facie case.

The aforementioned testimony, when viewed in its totality, constitutes a legitimate, non-discriminatory explanation for Tunsil's slow advancement. The testimony of Boggs was relevant in this regard. The district court's finding that Western Electric presented legitimate, non-discriminatory reasons for not advancing Tunsil is supported by the record and is not clearly erroneous.

### M. James E. Crawford

 Crawford is an Index 3 installer. The statute of limitations relevant to his claim bars causes of action accruing prior to January, 1974. The first index review, within the statute of limitations, at which he was presumably discriminated against occurred in June, 1974. Company Supervisor Wellborn testified that he supervised Crawford during an operation which involved iron work. During this work operation, Wellborn asked Crawford to cut some threaded rods to support a five-inch cable rack. Wellborn terminated this operation, for all employees, for two or three days. At the end of this delay, Wellborn put Crawford back on the operation, and Crawford had forgotten his measurements. As a result, Crawford cut the threaded rods one inch longer than they should have been. This was the only occasion Wellborn had to supervise Crawford. Boggs, a suborbit supervisor, testified that in the latter part of 1976, Crawford worked under the supervision of Mr. West who was supervised by Boggs. Boggs testified that after a specific operation was finished, he checked the work and "found a discrepancy in the way it had been performed." He later told Crawford, "That was not the correct way to perform that operation."

McLanahan, a suborbit supervisor, testified that Crawford had problems that affected his work, and that Crawford's "quality wasn't up." McLanahan added that Crawford's "biggest problem ... was his complete inability to follow simple directions." McLanahan stated that in his opinion Crawford did not "have the mechanical ability to go forward."

The district court found that the testimony of McLanahan, Wellborn, and Boggs was credible and presented a legitimate, non-discriminatory explanation for Crawford's slow progress through the Index Review System, and that said explanation was sufficient to rebut Crawford's prima facie case. Crawford contends that this finding is clearly erroneous.

After a review of the record, we are left with a definite and firm conviction that a mistake has been made. The district court has relied on insufficient factors in deciding whether Western Electric's proffered evidence constitutes a legitimate, non-discriminatory reason for the company's failure to advance an employee.

*Burdine* requires that an employer, in order to meet its burden of production, articulate in a reasonably specific manner the legitimate, non-discriminatory reasons for its employment decision. *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096. Moreover, the former Fifth Circuit implicitly rejected this "after-the-fact justification" which constitutes most of Western Electric's proffered non-discriminatory reasons. *Crawford,* 614 F.2d at 1320.

Western Electric presented the testimony of Wellborn and Boggs who both testified concerning events occurring in 1976, approximately two years after the June, 1974, index review at which Crawford was first presumably discriminated against. Such after-the-fact justification is legally insufficient to meet an employer's burden of production under *Burdine.* 450 U.S. at 258, 101 S.Ct. at 1096. In addition, Western Electric submits the testimony of McLanahan who was a suborbit supervisor since 1968. Crawford was hired by Western Electric in January, 1968. McLanahan tes-

tified that Crawford's performance was not satisfactory, that he had trouble following directions, and that he did not have the mechanical ability to progress. Without question, it is difficult for this court to discern whether McLanahan's testimony relates to a period of time before, after, or during the relevant June, 1974, index review period. General and non-time specific testimony does not satisfy the Supreme Court's mandate that the employer articulate in a clear and reasonably specific manner the legitimate, non-discriminatory reasons for its employment decision. *Burdine,* 450 U.S. at 255, 258, 101 S.Ct. at 1094, 1096. This court will not engage in speculation and conjecture as to the period of time McLanahan's testimony relates to. The events referred to by McLanahan could have occurred any day, month, or year between 1968 and 1977.

In sum, the general non-time specific, non-written, subjective evaluations proffered in this case are legally insufficient to meet Western Electric's burden of production. Accordingly, we hold that the district court erred in finding that the testimony of McLanahan, Wellborn, and Boggs presented a legitimate, non-discriminatory reason for Western Electric's failure to advance Crawford. We also hold that Western Electric failed to rebut Crawford's prima facie case.

## II. Title VII Appellants—Disparate Impact

■ The former Fifth Circuit held that appellants, Dupree, Smith, L. Hodge, and Tunsil established prima facie violations of Title VII by showing that the index review process had a disparate impact on blacks. *Crawford,* at 1321. Once a plaintiff has established the discriminatory impact of an employment practice, the defendant bears the burden of proving that the practice is justified by business necessity. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971).

In *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 245 (5th Cir.1974), the former Fifth Circuit had occasion to ad-

dress the issue of business necessity. In doing so, the court stated:

> The test is whether there exists an overriding legitimate business purpose such that the practice is necessary to the safe and efficient operation of the business. Thus, the business purpose must be sufficiently compelling to override any racial impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced or accomplish it equally well with lesser differential racial impact.

*Pettway*, 494 F.2d at 245 (citing *Robinson v. Lorillard Corp.*, 444 F.2d 791, 798 (4th Cir.), *cert. denied*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971)). The district court concluded that Western Electric successfully rebutted appellants' showing of employment discrimination. We disagree.

With regard to the Index Review System, the *Crawford* court expressly found that the line supervisors' evaluations of an employee's work are crucial factors in the index review decision to rate an installer "qualified" in a particular code. *Crawford*, 614 F.2d at 1314. Western Electric's witnesses testified that:

> (1) supervisors have no written instructions to guide them in their granting ratings of 9; (2) the company has no way to tell whether every supervisor uses standardized criteria in making this evaluation of installers' qualifications; (3) if an installer is not given a 9 in the index review, no reasons for the decision are contemporaneously recorded in written form; (4) line supervisors keep no permanent written records of the quality and efficiency of each installer's work; and (5) supervisors' assignments of installers to particular tasks are based on a variety of factors, one of which is the installer's perceived skills.

*Crawford*, 614 F.2d at 1314. The *Crawford* court recognized that establishing qualifications is an employer's prerogative, but warned that an employer may not utilize wholly subjective standards to judge its employees' qualifications and then plead lack of qualifications when its promotion process is challenged as discriminatory. Moreover, the former Fifth Circuit in *Rowe v. General Motors Corp.*, 457 F.2d 348, 358–59 (5th Cir.1972), clearly condemned subjective evaluations by white foremen of black employees' "ability, merit, and capacity." After examining *Rowe*, the *Crawford* court characterized Western Electric's "skill" requirement as suspect inasmuch as the requirement was not based on a written evaluation of the employer's conformity with a written standard.

Therefore, the court required Western Electric to demonstrate a business justification or business necessity for its Index Review System and the mechanics thereof. The district court found that "[o]ne business justification for the rating system is that it vests the responsibility for promotion in those who are most knowledgeable in the work of the installers and who have a direct responsibility for the proper performance of the installation jobs." The district court also found that the Index Review System rewards progression with higher pay and thus provides an incentive to installers to seek work in higher indexes as well as to undertake self-improvement programs. Last, the district court relied on the parties' stipulation that:

> The requirements that an installer be qualified to perform the work associated with a higher index before being advanced to that index and that an installer advance sequentially through the indexes are essential to the safe and efficient operation of the Jacksonville installation.

For all the aforementioned reasons, the district court found that the Index Review System, including its method for evaluating installer performance, was supported by sound, legitimate business reasons.

The district court, however, overlooked the fact that Western Electric presented no business justification for the mechanics of its Index Review System. The present system provides no written instructions to guide supervisors in their

rating of installers, has no written standardized criteria for supervisors to use in making evaluations of installers' qualifications, has no requirement that the rationale supporting promotional decisions be contemporaneously recorded in written form, has no requirement that supervisors keep permanent records of the quality and efficiency of each installer's work, and permits subjective evaluations by white foremen of black employees' "skill" in the absence of written standards or criteria. *Crawford*, 614 F.2d at 1314.

To date, Western Electric has not presented a scintilla of evidence to demonstrate a business necessity for the mechanics of an Index Review System which allows supervisors to make wholly subjective evaluations of employees, without simultaneously making written records of their reasons, and subsequently, to record, recall, and submit the reasons, as justification, when a grievance is filed. The *Crawford* court correctly concluded that such after-the-fact justification allows impermissible leeway for "editing" by the supervisors responsible for the promotion decisions. *Crawford*, 614 F.2d at 1320.

The record convinces us that Western Electric has not shown that its particular methods, i.e., the mechanics of its Index Review System, are justified by business necessity. *See Garcia v. Gloor*, 609 F.2d 156, 163 (5th Cir.1980).

The district court relied on insufficient factors in finding that Western Electric rebutted appellants' prima facie case of disparate impact. The court overlooked the factors which led the *Crawford* court to remand this case. Among the considerations mentioned by the court were the subjective non-standardized evaluations and after-the-fact justifications inherent in the system's operation. *Crawford*, 614 F.2d at 1320. We have considered the parties' other claims of error and find them without merit.

### Conclusion

We hold that the district court correctly concluded that Western Electric failed to rebut the disparate treatment, prima facie cases of appellees, Burton, Crump, Smith, and Wingard. Thus, we affirm the district court on this point of contention.

Second, we hold that the district court properly concluded that Western Electric rebutted the disparate treatment, prima facie cases of appellants, Dupree, L. Hodge, and Tunsil. The district court's holding, on this issue, is affirmed.

Third, we hold that the district court erred in finding that Western Electric rebutted the disparate treatment, prima facie cases of appellants, Wright, S. Hodge, Newsom, Bartley, Higginbotham, and Crawford. Correspondingly, we reverse and remand this case to the district court, and direct the court to determine appropriate damages.

Finally, we hold that the district court erred in finding that Western Electric met its burden of showing that its index review program was justified by business necessity. Finding error, we reverse and remand this case to the district court for determination of appropriate damages.

Accordingly, this case is

**AFFIRMED in PART, REVERSED in PART, and REMANDED.**