[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11477
Non-Argument Calendar

_____

D. C. Docket No. 06-01282-CV-2-IPJ

JOHN PHILLIPS,

Plaintiff-Appellant,

versus

AARON RENTS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 11, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

John Phillips appeals the district court's grant of summary judgment in favor

of Aaron Rents, Inc. ("Aaron") in his employment discrimination suit, filed pursuant to Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). On appeal, Phillips argues that the district court erred in finding that he did not present a prima facie case of race, gender, or age discrimination or retaliation. He also argues that the district court erred in finding that, even if he had established a prima facie case of discrimination or retaliation, he failed to establish that the reasons Aaron offered for his termination were pretextual. We AFFIRM.

## I. BACKGROUND

A. Phillips's Employment and Termination

Aaron manufactures, sells, and rents furniture, appliances, and electronics. Phillips, a white male, over forty years old, had been employed by Aaron on two separate occasions: from September 1995 to March 1998 (when he resigned to take another job), and from January 1999 until he was discharged in May 2005. During his second period of employment, Phillips was initially hired as a sales associate, but was transferred the position of store credit manager. The store was staffed by four employees. Other employees who worked in the store with Phillips during the course of his employment included store manager Jon Trammell (a 38-year-old

2

white male), assistant manager Sherry Poole (a 39-year-old African-American woman), outside sales representative Dion Fox (a woman), and various other sales associates. The regional manager during the relevant period was Ron Benedit. Benedit reported to regional vice-president, Phil Karl. Trammell, Benedit, and Karl, are the undisputed decision-makers as to Phillips's employment.

Aaron decided to eliminate the store credit manager position company-wide in early 2004 because regional credit managers could perform the same responsibilities more efficiently. Accordingly, although the company had allowed existing store credit managers to keep their jobs and job titles, they would not be replaced when their employment ended. After Aaron terminated Phillips, his store did not hire a new store credit manager.

During his first period of employment, Phillips was written up once for tardiness. After returning to work at Aaron, Phillips's job responsibilities as a sales associate included assisting customers with rental applications and approval procedures, ensuring and maintaining showroom cleanliness, and creating computer quotations, sales invoices, and rental agreements. He was also responsible for greeting and assisting customers in the showroom. After he was transferred to the credit manager position, he was responsible for verifying the information contained in rental applications, for approving or declining those

3

applications based on his findings, for generally assisting customers in the store, and, occasionally, for opening the store. He had a set schedule corresponding to store hours.

According to Benedit, Poole, as assistant manager, was required to work a certain number of hours each week, but did not have a set schedule. She was not required to be at the store at 9:00 A.M. each day because her job responsibilities often required her to work late, after the store had closed, or to stop by the warehouse before coming to the store. As outside sales representative, Fox was required to travel to clients' places of business. Accordingly, she frequently worked outside of the store, and was thus not required to be physically present there during set hours.

Phillips asserts that upon three occasions during his employment with Aaron, Poole made racially inappropriate remarks in the workplace. He asserts that once, when Phillips and Trammel were talking with Poole she said, "[y]ou white boys can run the store. I'll just sit my black ass down."[1] R2-33, Exh. 14 at 13 (169). On another occasion, Phillips claims that Poole said, "this business about approving somebody's application based on race is going to stop right now." Id. (170). Finally, Phillips asserts that once when Poole learned where Phillips was

_____

[1]Poole and Trammell denied that Poole made this statement. R2-33, Exh. 16 at 8 (28); Exh. 15 at 16 (59-60).

4

going on vacation, she sarcastically inquired as to whether "any black people went there." Id. (172).

Phillips testified that, as early as 2004, he complained to Karl, over the phone, about how he found it impossible to work with Poole, but that he did not mention any racial problems. In January 2004, Phillips complained to Benedit over the phone that Poole's racial remarks made him uncomfortable. Phillips complained to Trammell about Poole when she made one of the comments noted above, because Trammell had been present at that time. In March or April 2005, Phillips also complained about Poole to Pete Sarris, who was responsible for providing anti-discrimination training to Aaron employees. Sarris testified that, in the course of his job, he would forward complaints of this nature to the appropriate persons or immediate supervisors to handle.

In April 2005, Karl made a scheduled visit to the store where Phillips worked. He observed that Phillips – wearing a wrinkled and untucked shirt and tattered pants – was in violation of Aaron's dress code. Phillips received verbal counseling as to proper attire. On 7 May 2005, Devin Hartman, an assistant manager at another store, made an unannounced visit to Phillips's store posing as a customer. Hartman later reported his visit to Benedit by email. He reported that he had arrived at the store at 9:00 A.M. to find it locked with no employee present.

5

Phillips had arrived at 9:30, and provided no explanation or apology for his lateness. Phillips told Hartman, "I have good intentions of being here at 9:00, but you know how that goes." R2-29, Exh. 4 at 1. Once inside the store, Phillips did not assist Hartman, but sat with his feet up on his desk, reading the newspaper. Phillips told Hartman to interrupt him if he needed assistance with anything. Phillips asserts that Poole was supposed to be working with him on Saturday, 7 May, but that she did not arrive until 45 minutes after he did.

Benedit discussed Hartman's email with Trammell, and Trammell recommended that Phillips be terminated. As he reported to Benedit at that time, Trammell had spoken with Phillips several times prior to 7 May about being late to work. From January 2004 through May 2005, Phillips had been late to work over 65 times. Once Karl had approved the action, Benedit and Trammell decided to proceed with Phillips's termination. At the time of his termination, Trammell told Phillips that he was being terminated for opening the store late, and for his unprofessional behavior towards Hartmann. Phillips asserts that Poole was not disciplined for her tardiness on that day.

After Phillips's termination, John Yonkman, a thirty-four-year-old white male was hired as an assistant manager. Although Aaron did not hire a replacement for Phillips, Yonkman's job responsibilities included many of those

6

which had been performed by Phillips. The remainder of Phillips's duties are performed by regional credit manager, Tom Whitby.

B. Evidence Produced in the Course of Litigation

After his termination, Phillips filed a complaint against Aaron, alleging discrimination on the basis of his race, sex, and age, and retaliation for reporting racial misconduct, all in violation of Title VII, 42 U.S.C. § 1981, and the ADEA. Aaron moved for summary judgment as to all of Phillips's claims. In support of its motion, in addition to several sworn declarations and depositions, Aaron also submitted a memo, sent to employees, which affirmed that company policy prohibited discrimination based on race, sex, and age, among other factors, and instructed employees to call a toll-free phone number if they thought they were subject to discrimination. Phillips acknowledged receipt of that memo. Aaron also submitted its policy manual, which stated that employees could be disciplined or terminated for excessive tardiness, failure to notify a supervisor of tardiness, violation of the discrimination policy, or improper conduct towards customers, visitors, or other employees. Finally, the Aaron dress code policy stated male employees had to wear either an Aaron's logo collared shirt, or a shirt and tie.

Aaron also pointed to Phillips's deposition testimony that he had reviewed Aaron's policy manual and he knew Aaron's dress code. Phillips acknowledged

7

that he violated the dress code once when Karl visited the store and that Trammell had subsequently spoken to him about his attire.

With respect to the May 7 incident, Phillips admitted that he did not arrive at the store until 9:30 A.M. because he had to jump start his car, but he said he did not recall the events that occurred immediately after he arrived at the store. Phillips testified that Poole did not arrive at the store that day until 10:15 A.M., and that she only occasionally worked on Saturdays. Phillips recalled that Trammell showed him a copy of Hartman's e-mail to Benedit, and told him that he was being terminated because he was late opening the store on May 7 and was unprofessional towards a customer. He admitted that no Aaron representative ever told him his termination was due to his race, gender, age, or complaints regarding Poole, and that he had no reason to believe the decision-makers were biased against him due to his race, gender, or age. Finally, in its response to Phillips's claim for unemployment compensation, Aaron had explained that it fired Phillips because he did not open the store on time and did not notify anyone that he was running late.

In opposition to summary judgment, Phillips also submitted evidence. Aaron's response to Phillips's Equal Employment Opportunity Commission ("EEOC") claim indicates that Aaron terminated Phillips for "excessive tardiness,

8

poor performance (opening the store late and failing to serve customers) and for violating the Company's dress code." R2-33, Exh. 3 at 8. According to Aaron's internal personnel action form, it terminated Phillips because he opened the store 30 minutes late without notifying the manager and violated the dress code. In response to interrogatories, Aaron stated that it terminated Phillips because of his "excessive and recurring tardiness, his violations of [Aaron's] dress code policy, and his opening of the store thirty minutes after the scheduled time to open on . . . May 7." R2-33, Exh. 11 at 5. In addition, Phillips submitted a handwritten document that listed seven occasions in 2004 and 2005 upon which Trammell spoke with Phillips about his "excessive" tardiness. R2-33, Exh. 10.

Phillips also presented the deposition of Trammell, who, when asked who had replaced Phillips at the store, answered that 34-year-old Yonkman had been hired as an assistant manager. Yonkman's duties included assisting the manager and waiting on customers, and he occasionally helped collect delinquent accounts as well. Trammell also testified that Phillips received annual written job evaluations that he would keep in a personnel file at the store and send to the regional office. Although Trammell stated that he gave Phillips a low rating for tardiness on those evaluations, Trammell and Aaron could not produce the evaluations.

9

The district court found that Phillips failed to present a prima facie case of race discrimination because he failed to show that he was similarly situated to Poole.[2] The court acknowledged evidence showing that Poole made racial comments, but it found that these could not support Phillips's claim of race discrimination because Poole was not one of the decision-makers responsible for terminating him. The court found that Phillips's gender discrimination claim also failed because neither Poole, Fox, nor any other female employee was tardy the number of times Phillips was, or displayed the work deficiencies noted by Aaron and, therefore, none was a valid comparator.

Next, the court concluded that Phillips's age discrimination claim failed, because he could not show that he had been replaced by a substantially younger individual. Specifically, the court reasoned that Phillips's position had been eliminated by a change in company policy, and although both Yonkman – a 34-year-old – and another individual assumed some of Phillips's former duties, Phillips had "failed to establish that a substantially younger person filled the position from which he was terminated." R1-40 at 10.

---

[2] Although the district court never specifically mentioned Phillips's race discrimination claim under § 1981, it implicitly rejected it on this basis as well because the analysis for a § 1981 claim is the same as for Title VII race discrimination claims, Crawford v. Western Elec. Co., 745 F.2d 1373, 1376 (11th Cir. 1984), and it granted summary judgment as to "all" of Phillips's claims. R1-41.

Finally, the district court found that, although Phillips had engaged in protected conduct when he complained about Poole's comments to Sarris, there was no evidence that the decision-makers were aware of his complaints to Sarris when they decided to terminate Phillips. The court further found that, even if Phillips had presented a prima facie case of race, gender, or age discrimination, or retaliation, Aaron had presented several legitimate reasons for terminating Phillips, and Phillips had failed to show that these reasons were pretextual. Accordingly, the court granted summary judgment in favor of Aaron. Phillips now appeals.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all the evidence and making reasonable inferences in the light most favorable to the non-moving party. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is appropriate when the evidence so viewed presents no genuine issue of fact and compels judgment as a matter of law. Fed. R. Civ. Proc. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

A. Substantive Discrimination Claims

Title VII prohibits employers from discriminating against any individual with respect to the terms of employment on the basis of race or sex. 42 U.S.C.

§ 2000e-2(a)(1). Section 1981 also prohibits discrimination in the making and enforcing of contracts based on a person's race. 42 U.S.C. § 1981(a). The ADEA prohibits an employer from discriminating on the basis of age. 29 U.S.C. § 623(a). The same analysis applies to claims for employment discrimination brought under Title VII as to those brought under § 1981. Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1060 (11th Cir. 1994). That analysis also applies to age discrimination claims brought under the ADEA. See Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001).

A plaintiff may establish a claim of race, sex, or age discrimination by direct or circumstantial evidence. For claims based only upon circumstantial evidence, we use the three-step burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973). See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (Title VII); Crawford v. Western Electric Co., 745 F.2d 1373, 1376 (11th Cir. 1984) (§ 1981); Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which "creates a rebuttable presumption that the employer acted illegally." Wilson, 376 F.3d at 1087.

After a claimant establishes a prima facie case of discrimination, the employer may articulate one or more legitimate, nondiscriminatory reasons for the challenged employment action. Chapman, 229 F.3d at 1024. If an employer articulates one or more legitimate reasons, then the plaintiff must produce evidence sufficient to allow a reasonable fact finder to conclude that the employer's reasons were pretextual, in order to avoid summary judgment for the employer. Id. If an employer articulates multiple legitimate reasons for the adverse action, the plaintiff must present sufficient evidence that all of those reasons are pretextual. Id. at 1037.

*1. Race and Sex Discrimination*

A plaintiff can establish a prima facie case of race or sex discrimination by showing that: (1) he was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action by his employer; and (4) similarly situated employees outside of the protected class were treated more favorably. Wilson, 376 F.3d at 1091. The employees outside of a plaintiff's protected class who are identified as comparators "must be similarly situated 'in all relevant respects.'" Id. (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1992) (per curiam) (appending district court order)). "We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts

13

from second-guessing employers' reasonable decisions." <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999).

Phillips complains that Aaron treated Poole, a black woman, and Fox, a woman, more favorably than himself. However, our review of the record satisfies us that Poole was not sufficiently similarly situated to be a valid comparator for Phillips. She held a different position with job responsibilities requiring her to be out of the store. This meant that she was not on a set schedule of hours. Further, there is no evidence that she engaged in misconduct "nearly identical" to Phillips's relevant conduct. There is no record that she was excessively tardy, that she violated the dress code, that she was ever responsible for or late in opening the store, or that she mistreated a potential customer.

Similarly, Fox, as an outside sales representative, had job responsibilities which took her out of the store and thus she was not required to be present during set hours. There is no evidence that she ever failed to comply with the dress code or that she acted inappropriately towards customers. Accordingly, we agree with the district court that neither Poole nor Fox is an appropriate comparator for purposes of Phillips's race and sex discrimination claims. Therefore, Phillips failed to present a <u>prima</u> <u>facie</u> case of race or sex discrimination.

14

*2. Age Discrimination Claim*

When an employee has been replaced, the elements of a prima facie case for age discrimination may be expressed slightly differently: a plaintiff must show that: (1) he was a member of the protected group of persons between the ages of forty and seventy; (2) he was subject to adverse employment action; (3) he was qualified for the job; and (4) a substantially younger person filled the position from which he was terminated (the "replacement element").[3] Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999). In determining whether or not an employee has been replaced, we consider the employee's position and responsibilities, and whether those features of the job were clearly defined. Hawkins v. Ceco Corp., 883 F.2d 977, 982 (11th Cir. 1989) (evaluating the replacement element in the context of a race discrimination claim).

In Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir. 1987), the plaintiff presented evidence that the employer (1) hired a younger employee, (2) had the plaintiff train that younger employee, (3) fired the plaintiff, (4) assigned most of the plaintiff's duties to the younger employee, who also performed other

---

[3]Even though the suggested comparator here, Yonkman, was fewer than 10 years younger than Phillips, we have held that as few as three years difference in age can satisfy the "substantially younger" requirement. See Carter v. DecisionOne Corp., 122 F.3d 997, 1003-04 (11th Cir.1997) (holding that plaintiff aged 42, who was replaced by employee aged 39, met the "substantially younger" replacement requirement under ADEA); see also Damon, 196 F.3d at 1360.

duties, and (5) assigned some of the plaintiff's duties to various other employees. We held that those facts satisfied the replacement element of the prima facie case of age discrimination, even though the employer argued that it had terminated the plaintiff's old position. Id. Similarly, in Hawkins, the plaintiff worked as an unskilled laborer, and after he was fired, two other employees performed his duties for a few weeks. Hawkins, 883 F.2d at 983-84. Despite the fact that new unskilled laborers hired by the employer did not assume the former employee's specific responsibilities, but instead filled a general need in the workforce, we found that the laborer hired immediately after the plaintiff was his replacement. Id. (defeating the plaintiff's prima facie case, because the replacement was also a member of the protected class).[4]

The record indicates that Aaron eliminated Phillips's position, credit manager, according to its pre-existing plan, and the credit manager's duties relating to customer credit accounts shifted primarily to the regional credit manager. Although Yonkman did not assume Phillips's job title, he was hired after Phillips

---

[4]As discussed in the context of race and sex discrimination, a prima facie case of discriminatory discharge based on age may also be established if the plaintiff shows that "the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained," Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984) (quoting Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570 (5th Cir. Unit B 1982)) (discussing various formulations). However, we have already rejected Phillips's suggestion that Poole is a proper comparator for the purpose of any of his discrimination claims.

16

was terminated, which served to maintain the same number of employees at the store. Phillips did not train Yonkman, and the record is unclear as to the level of skill his position required. However, the specific facts regarding Phillips's termination and Yonkman's assumption of at least some of his duties arguably bring this case in line with Rollins and Hawkins. Based on these facts, a reasonable fact finder might find that Yonkman replaced Phillips, and thus that Phillips presented a prima facie case of age discrimination.

However, because Aaron has offered multiple, legitimate, non-discriminatory reasons for Phillips's termination, even if Phillips did meet his threshold burden, he must produce evidence sufficient to allow a reasonable fact finder to conclude that the employer's reasons were pretextual, in order to avoid summary judgment. See Chapman, 229 F.3d at 1024. A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proferred legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (quotation omitted). "Provided that the proferred reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it." Chapman, 229 F.3d at 1030. Moreover, a mere "scintilla" of evidence in

17

favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

Evidence that an employer had additional reasons for terminating an employee, even if those reasons were undisclosed, does not prove pretext. See Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998). If an employer offers different reasons for terminating an employee, those reasons must be fundamentally inconsistent in order to constitute evidence of pretext. See Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997) (per curiam). Finally, we draw an adverse inference "from a party's failure to preserve evidence, [but] only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam).

First, Phillips failed to offer any evidence that Aaron's true reason for terminating him was based on his age. Phillips admitted that he was never told that he was terminated due to his age, and he offered no basis for a belief that the Aaron decision-makers were biased against him due to his age. Although the reasons Aaron cited for terminating Phillips varied slightly by occasion, that alone does not establish pretext. See Tidwell, 135 F.3d at 1428. None of the reasons offered are fundamentally inconsistent with one another and Aaron never explicitly denied any

18

of these reasons.  See Zaben, 129 F.3d at 1458-59.  Also, Aaron's failure to produce Phillips's annual job evaluations does not give rise to an inference of pretext, because there is no evidence of bad faith.  See Bashir, 119 F.3d at 931. The failure is, at best, a scintilla of evidence, and it only concerns one of the reasons Aaron gave for terminating Phillips.  Thus, we conclude that Phillips did not rebut, head on, all the reasons given by Aaron for his termination.  See Chapman, 229 F.3d at 1030.  Accordingly, we find that Phillips failed to present sufficient evidence of pretext, and that his claim for age discrimination must fail.

B. Retaliation Claim

Finally, Title VII additionally prohibits an employer from retaliating against an employee for engaging in protected conduct.  See 42 U.S.C. § 2000e-3(a). Retaliation claims are also analyzed under the McDonnell-Douglas burden-shifting framework.  See Holifield, 115 F.3d at 1566.  Just as in a case of substantive discrimination, if a plaintiff establishes a prima facie case, and the employer has proffered one or more legitimate, non-discriminatory reasons for the adverse employment action, "the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation."  Id.

We have already found that Phillips failed to raise a genuine issue of material fact as to whether the reasons given by Aaron for his termination were

19

pretextual.  Accordingly, even if he did meet his threshold burden as to retaliation, Phillips's claim for retaliation must fail.

## III. CONCLUSION

Phillips appeals the district court's grant of summary judgment in favor of Aaron as to his employment discrimination claims.  Upon <u>de novo</u> review, we find that Phillips failed to present a <u>prima facie</u> case of race or gender discrimination. We further find that he failed to demonstrate that the reasons Aaron gave for his termination were pretextual, and thus that his claims of age discrimination and retaliation must fail.  Accordingly, we **AFFIRM** the district court's grant of summary judgment.