**Tadesse ASHAGRE, Plaintiff,**

v.

**The SOUTHLAND CORPORATION, Defendant.**

**Civ. A. No. H–80–2866.**

United States District Court,
S. D. Texas,
Houston Division.

Sept. 8, 1982.

---

**1216**

Gordon Cooper, Houston, Tex., for plaintiff.

Kent William Robinson, Andrews & Kurth, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

This is an employment discrimination case arising out of the discharge of plaintiff, a black male of Ethiopian origin, by defendant, the operator of convenience stores which do business under the trade name of 7-Eleven. Plaintiff, Mr. Tadesse Ashagre, brought this suit against defendant, Southland Corporation ("Southland") under 42 U.S.C. § 1981, and its jurisdictional counterpart 28 U.S.C. § 1343(4), and under section 706 of Title VII, 42 U.S.C. § 2000e–5, contending that Southland unlawfully discriminated against him because of his race (black) and/or national origin (Ethiopian). Specifically, Mr. Ashagre contends that he was transferred from Southland's Irving, Texas district, where he worked in the salaried position of manager-trainee, to the Houston, Texas district, where he was required to work at an hourly wage as a clerk-salesperson, rather than as a salaried manager-trainee, and that he was ultimately fired by Southland, on the basis of his race and/or national origin. He further contends that he was physically assaulted when he was fired and that Southland thereafter gave out false work references on him in an effort to harm him.

This case was tried before a jury on August 18, 19, and 20, 1982. For the reasons set out below, this court instructed a verdict in favor of Southland on plaintiff's section 1981 and Title VII claims, pursuant to rule 50(a) of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 50(a).[1]

The evidence introduced at trial shows that Mr. Ashagre was initially hired by Southland in the Irving, Texas district

---

1. At the close of the plaintiff's case, defendant made a motion for directed verdict, pursuant to

on June 22, 1979. He worked in one of Southland's 7-Eleven stores as assistant manager and was ultimately promoted to the manager-trainee level at a salary of $462/biweekly. On November 1, 1979, Mr. Ashagre left his position with Southland.[2] At the time he left, however, he was considered eligible for reemployment with Southland. In January of 1980, Mr. Ashagre moved to Houston and re-applied for work in Southland's South Houston District. He was hired as a clerk-salesperson in a Houston-area 7-Eleven, at an hourly wage of $3.75, on January 25, 1980. He worked temporarily in different stores on various shifts. On March 6, 1980, Mr. Ashagre was promoted to the position of assistant store manager and given a raise in pay to $4.25 an hour. On April 7, 1980, he was transferred to a store under the supervision of Mr. Bruce Albright, where he worked as an assistant manager on the 3:00 p. m. to midnight shift. That evening, Mr. Albright and Randall Chism went to the store on a store security audit and found that Mr. Ashagre had closed the store early, in violation of Southland's company policy. Mr. Albright warned Mr. Ashagre of the viola-

rule 50(a) of the Federal Rules of Civil Procedure, *Fed.R.Civ.P.* 50(a), on plaintiff's claim under section 1981, and a motion for involuntary dismissal, pursuant to rule 41(b) of the Federal Rules of Civil Procedure, *Fed.R.Civ.P.* 41(b), of plaintiff's claim under Title VII. While this court recognizes that defendant in a Title VII case may rely on evidence appearing in the plaintiff's case to establish a nondiscriminatory reason for his action and need not come forward with evidence, *see Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281–82 (7th Cir. 1977), *Sime v. Trustees of California State University and Colleges*, 526 F.2d 1112 (9th Cir. 1975), the court deferred ruling on defendant's motions at the close of plaintiff's case. The motions were re-urged at the close of all of the evidence, and this court directed a verdict on both plaintiff's section 1981 and Title VII claim. Although a motion under rule 50(a) and 41(b) are similar in effect, rule 50 applies only to cases tried to a jury, while rule 41(b) applies only to nonjury cases. The difference between the two motions is important because different standards are applied:

> On a motion for involuntary dismissal at the close of the plaintiff's evidence in a nonjury case the court is free to weigh the evidence and to make its own findings of fact. It may not weigh the evidence on a motion for directed verdict or for judgment notwithstanding the verdict in a jury case and is limited to deciding whether there is evidence on which reasonable men could find for the party opposing the motion.

9 C. Wright and A. Miller, Federal Practice and Procedure, Civil § 2530 (1971 & Supp.1981). At the close of the evidence in the present case, the court determined that with respect to both the 1981 claim and the Title VII claim, there was no evidence "on which reasonable men could find for the party opposing the motion", and directed a verdict under rule 50(a) on both claims. In a case such as this, involving both a Title VII claim and a claim under section 1981, if the 1981 claim is disposed of before trial, plaintiff has no right to a jury trial on his Title VII claim, and a rule 41(b) motion for involuntary dismissal would be appropriate on the Title VII claim. In this case, however, both claims were before the jury and therefore the granting of a directed verdict on both claims under rule 50(a) is appropriate. Even if rule 41(b) were applicable to the Title VII claim in this case, the plaintiff would not be prejudiced by the court's application of rule 50(a), since satisfaction of the rule 50(a) standard implies satisfaction of the rule 41(b) standard. *See Letino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 476 n.1 (3rd Cir. 1979).

2. Southland, in its pleadings, contends that Mr. Ashagre was fired from his position. Mr. Ashagre claims that he took what amounts to a leave of absence and that he was transferred to the Houston Division in January, hence his claim of discrimination on the basis that he was demoted by Southland when they "transferred" him to Houston. The evidence does not expressly support either of these contentions. Mr. Ashagre's discharge papers reflect that he was "voluntarily dismissed" for "failure to report to work" (as opposed to "involuntarily dismissed"). In his deposition, Mr. Ashagre states that he told Southland he was leaving in November to travel with one of his professors and because he needed the time to study in order to complete his degree. There was no evidence presented that Mr. Ashagre was transferred to Houston by Southland. Mr. Ashagre himself stated that he decided to come to Houston in January, after he completed his studies, to be with his sister, who resides in Houston and who is also a Southland employee. The evidence reflects that Mr. Ashagre was required to fill out an application for employment with Southland when he arrived in Houston. There was no evidence that Southland guaranteed or even promised him a job. Mr. Ashagre's claims of discrimination on the basis that he was demoted when he was "transferred" by Southland to Houston are without merit.

tion and informed him that such a violation was cause for immediate dismissal. The violation was noted on Mr. Albright's weekly security audit form and on an interoffice memorandum.

On the evening of April 24, 1980, Mr. Albright again made a security visit, this time with another Southland supervisor, Tony Cain. Sometime after 11:00 p. m., they parked outside the 7-Eleven in which Mr. Ashagre was working and watched him through binoculars. They observed him closing the store before midnight and failing to ring up his final sale, both in violation of company policy. Mr. Albright entered the store after midnight and confronted Mr. Ashagre. Mr. Ashagre admitted to both closing the store early and to failing to ring up the sale. He told Mr. Albright that Hassan Elbaawna, the store manager and Ashagre's immediate supervisor, gave him permission on April 22, 1980, to close the store early. He said that he intentionally failed to ring up the sale because he had already taken a grand total of the sales on his cash register, that he had left the money from the sale in a brown paper bag behind the cigarettes for the morning shift to ring up, and that the morning shift needed cash and didn't have a key to the safe. Mr. Albright fired Mr. Ashagre that evening. In doing so, he shook his finger at Mr. Ashagre, but never touched him. On his weekly store security audit form, and on Mr. Ashagre's discharge papers, Mr. Albright noted that Mr. Ashagre was fired for closing the store early and for failing to ring up his final sale. The following day, Phil Snider, a white male who had been working in another Southland 7-Eleven store, worked Mr. Ashagre's shift and continued to do so for about two weeks. Thereafter, Carmen Luevano Kalil, a Hispanic female, was hired to replace Mr. Snider. At trial, Mr. Ashagre testified that after he was fired he applied for at least two jobs with different companies and that he was not hired. He testified that he felt it was because Southland gave out false work references on him. His

testimony was uncorroborated by any other evidence.

In a Title VII case, the plaintiff must establish a prima facie case of employment discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff proves, by the preponderance of the evidence, a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by defendant were not the true reasons for discharge, but only a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

A review of the entire record in this case indicates that Mr. Ashagre failed to establish a prima facie case of discrimination on the basis of race and/or national origin. Even assuming that he did make such a showing, Southland articulated legitimate, nondiscriminatory reasons for discharging Mr. Ashagre, and Mr. Ashagre failed to prove, by a preponderance of the evidence, that Southland's reasons were merely pretextual. It is also clear that, with respect to the claim under section 1981, Mr. Ashagre failed to make any showing of purposeful discrimination. *See Williams v. DeKalb County*, 577 F.2d 248, *as modified upon rehearing*, 582 F.2d 2, 3 (5th Cir. 1978).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) the Supreme Court set out the requirements for a prima facie case of discrimination based on failure to hire. The Fifth Circuit first applied these requirements to a case involving a discharge from employment in *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979). The court in *Marks* found that, to establish a prima facie case of employment discrimination in a discharge, the plaintiff must show that 1) he is

a member of a protected class; 2) he was qualified for the job from which he was discharged; 3) he was discharged; and, 4) after he was discharged, his employer filled his position with a non-minority. *Id.* at 1155.[3]

▮ Applying the factors necessary to establish a prima facie case of employment discrimination in discharge to the present case, it is not contested that Mr. Ashagre is a member of a protected class, that he was qualified for the job from which he was discharged, or that he was discharged. The fourth factor required for a prima facie test by *Marks,* that plaintiff be replaced by a nonminority, however, is contested. Plaintiff contends that he was "replaced" by Phil Snider, a white male; defendant contends that Phil Snider, already a Southland employee, was just working Ashagre's shift temporarily until a permanent employee could be hired, and that Ms. Kalil, a Hispanic female, was hired as a permanent replacement. This court is of the opinion that, with respect to the fourth factor, the court in *Marks* envisioned that in a case such as this the permanent employee—the one actually hired by the defendant to replace the plaintiff—is the one to be considered in determining whether a prima facie case has been established, since it is from the defendant's act of hiring a nonminority to replace a minority that a preference for the nonminority, and hence discrimination against the minority, may be inferred. In this case, plaintiff has failed to meet this fourth requirement. The person hired by Southland to replace Mr. Ashagre—Ms. Kalil—is Hispanic.

▮ Mr. Ashagre's failure to meet the fourth factor, however, does not necessarily mean that he has not established a prima facie case of discrimination. Courts have recognized that a rigid formula such as the one set out in *Marks* will not necessarily apply to every fact pattern. As noted by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "[t]he facts necessarily will vary in Title VII cases, and the specification [in the four prong test] of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13, 93 S.Ct. at 1824 n.13. Thus, while failure to meet the fourth requirement by showing that a nonminority was hired to replace the plaintiff may amount to failure to establish a prima facie case in certain cases, *see, e.g., Coleman v. Braniff Airways, Inc.,* 664 F.2d 1282 (5th Cir. 1982), it may not in other cases, *e.g., Jones v. Western,* 669 F.2d 280 (5th Cir. 1982) (court notes that prima facie case of discrimination in discharge may exist even where plaintiff is replaced by minority, since replacement by another minority may be a pretextual device designed to disguise the act of discrimination.)

---

**3.** In holding that *McDonnell* applied to discharge cases, the court in *Marks* relied in part on the Seventh Circuit's opinion in *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277 (7th Cir. 1977). In *Flowers,* the court stated that some minimal showing of satisfactory performance is necessary in order to establish a prima facie case of discrimination:

> Some showing of satisfactory performance is necessary to raise an inference of discrimination in discharge of a racial minority member. Attributing a discharge to racial discrimination without any evidence that plaintiff was meeting normal job requirements would be unwarranted and unfair. Satisfactory performance is an ordinary prerequisite of continued employment, just as job qualification is an ordinary prerequisite to hiring.

> \* \* \* \* \* \*

> The plaintiff need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him. *Id.* at 1282–83 (citations omitted). In setting out the four-prong test for a prima facie case, the Fifth Circuit did not expressly include this requirement. Because of this, and because we find that Mr. Ashagre did not meet even the four-prong test required by *Marks,* we need not address here the issue of whether Mr. Ashagre made this showing, or whether his knowing violations of company policy preclude his ability to make such a showing. *See Franklin v. Crosby Type Co. and Int'l Typo Union,* 411 F.Supp. 1167, 1171 (N.D.Tex.1976).

■ The vital inquiry in the determination of a prima case is whether there is an *inference* of discrimination. The factors set out in *Marks,* like those set out in *McDonnell,* were established by the courts and are important because they raise an inference of discrimination, and thus a prima facie case, because "we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Co. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). In effect, the prima facie case is a presumption created by law that the employer discriminated, which may be rebutted by the employer. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Even where the facts of a case fail to meet the rigid four-prong test, a prima facie case may be established where plaintiff has introduced evidence that he was discharged from the position for which he was qualified "under circumstances which given rise to an inference of unlawful discrimination." *Id.* at 253, 101 S.Ct. at 1093. *See Jones v. Western Geophysical Co.,* 669 F.2d 280, 284 (5th Cir. 1982). In the present case, however, Mr. Ashagre has failed to introduce any evidence that he was discharged under circumstances that give rise to an inference of unlawful discrimination.

■ Even assuming that Mr. Ashagre has made a prima facie showing of discrimination on the basis of his race and/or national origin, which would create a presumption of unlawful discrimination, he has failed to meet his ultimate burden. As previously noted, when a plaintiff successfully establishes a prima facie case, the burden shifts to the defendant "to-articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. As explained by the Supreme Court in *Burdine:*

> The defendant · need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted . . . .

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95 (citations omitted.) Southland went beyond its required burden. Mr. Bruce Albright testified that plaintiff was fired because he violated two company policies—closing the store early and failing to ring up a sale. The fact that plaintiff closed the store early and failed to ring up the sale was corroborated even by plaintiff himself, who admitted both violations. The fact that these were violations for which an employee of Southland could be immediately fired was corroborated by Southland's *Policy and Procedure Manual,* and by Southland's "Employee Awareness Form," a form required to be signed by Southland employees. The fact that plaintiff was aware that these were violations of company policy and knew he could be immediately fired for such violations is evidenced by his signature on the "Employee Awareness Form." In addition, with respect to the closing of the store early, Mr. Ashagre admitted that he had been previously warned by Mr. Albright that this was a violation of company policy. Finally, the fact Mr. Albright fired him for these violations, or at least noted that he was firing Asharge for these violations at the time he fired him, is evidenced by the "Store Security Audit Form," dated May 24, 1980, and by the notations in Southland's employee file on Mr. Ashagre.

Once Southland met its burden, as we find it did, Mr. Ashagre had the ultimate

burden of proving, by a preponderance of the evidence, that Southland's proffered reasons for discharging him were pretextual. He could do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. A review of Mr. Ashagre's contentions, and the evidence offered to support his contentions, makes it clear that he has not met his burden of proving that Southland's proffered reasons were pretextual.

As previously noted, Mr. Ashagre admitted that he closed the store early on both occasions. However, he asserts that the store manager, Hassan Elbaawna, gave him permission to close the store early on April 24, 1980, the incident for which he was fired. His testimony was uncorroborated.[4] At least one coworker, on a form filed with the Equal Employment Opportunity Commission, did agree that Mr. Elbaawna gave them permission to close the store early, but stated that permission was given only for the night of April 22. Mr. Albright testified that he had contacted Mr. Elbaawna, and that Mr. Elbaawna had denied giving Mr. Ashagre permission to close early.

Mr. Ashagre also admitted to failing to ring up the final sale on April 24, 1980. He testified that he had already counted the money and had taken a grand total, and that he had left the money in a brown paper bag behind the cigarettes for the morning shift to ring up. And, on one occasion, he also stated that he did so because the morning shift needed change and didn't have a key to the safe. This testimony was also uncorroborated. No brown paper bag was found. Southland introduced evidence to the effect that employees are required to count their money after they close the store, not before, and that all employees are required to ring up all sales. While Mr. Ashagre testified that he was not

aware of any company policy requiring discharge for failure to ring up a sale, Southland introduced the "Employee Awareness Form", signed by Mr. Ashagre, that states that an employee may be immediately discharged for failure to ring up a sale.

Finally, Mr. Ashagre failed to offer any evidence that nonminorities had violated the same policies and had not been fired.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the verdict in this case be directed for defendant pursuant to rule 50(a) of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 50(a).

Counsel for defendant shall, within fifteen (15) days of the date of this Memorandum and Order, submit for entry by this court an appropriate judgment.

---

4. Mr. Elbaawna passed away prior to this trial.