[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12209
Non-Argument Calendar

_____

D. C. Docket No. 02-02161-CV-T-17-MSS

HAMID G. BOJD,

                                             Plaintiff-Appellant,

versus

GOLDER ASSOCIATES, INC.,

                                             Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 26, 2006)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Hamid G. Bojd, an Associate at Golder Associates, Inc. ("Golder"), a consulting engineering firm, was discharged on November 26, 2001. He brought an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), alleging discriminatory discharge based on his religion, Islam, and his national origin, Iranian. The district court granted summary judgment in favor of Golder and Bojd appeals this order on the grounds that he established prima facie cases of discriminatory discharge based on his religion and national origin and that he proffered sufficient evidence of pretext to withstand Golder's summary judgment motion. For the reasons set forth more fully below, we affirm.

We review the grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. Johnson v. Governor of State of Fla., 405 F.3d 1214, 1217 (11th Cir.) (en banc), cert. denied, 126 S.Ct. 650 (2005). Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Because Bojd supports his claims with circumstantial evidence, we analyze his claim using the framework set forth in McDonnell Douglas Corp. v. Green, 411

2

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). Under the McDonnell Douglas framework, Bojd must first establish a prima facie case of discrimination. Id. Once a prima facie case of discrimination is established, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). If the employer successfully does so, the burden shifts back to the Bojd to show that the reason offered by the employer was a pretext for discrimination. See id.

Bojd began working at Golder's Tampa office in 1997. In September 2000, Tony Grasso became the Tampa office manager. Grasso's role in Bojd's termination was to provide a recommendation to upper management, to evaluate Bojd's conduct, and to report his opinion to upper management. Although Grasso made the recommendation to terminate Bojd, the termination decision was made by George Deardorff, Golder's Vice President of Operations. As reasons for its decision to terminate Bojd, Golder proffered Bojd's: (1) attitude and confrontational relationship with its Tampa management, particularly Grasso; (2) insubordination; (3) lack of respect towards his colleagues, particularly Grasso; (4) unwillingness to cooperate with Grasso; and (5) failing to meet overall expectations of an Associate at Golder.

3

Assuming, arguendo, that Bojd established prima facie cases of religious and national origin discrimination, we hold that Bojd's claims fail because he has not presented evidence sufficient to raise a genuine issue of material fact as to pretext. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). Bojd does not dispute that the reasons proffered by Golder are legitimate and non-discriminatory. Thus, "[t]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and quotation marks omitted) (second alternation in original). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." Wilson, 376 F.3d at 1088. The plaintiff can show pretext through evidence that (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence. Combs, 106 F.3d at 1528. The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (citation and quotation marks omitted). Where multiple reasons are advanced, the plaintiff

4

must show that each reason was a pretext. Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc). Moreover, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Brooks, 446 F.3d at 1163 (citation and emphasis omitted).

On appeal, Bojd bases his pretext argument on the testimony of a former co-worker, Jianhua (Jay) Chen, who stated that the only person who gave him a reason as to why Bojd was fired was Grasso, who "essentially" said that he could not stand Bojd and, if they continued to work together, one of them had to go. Even if Grasso's comment is inconsistent with Golder's legitimate non-discriminatory reasons, which primarily center around Bojd's poor relationship with Grasso, Grasso's comment, in and of itself, is insufficient to establish that discrimination was the real reason for Bojd's termination. See Hawkins v. Ceco Corp., 883 F.2d 977, 986 (11th Cir. 1989) ("[A] dislike alone is not evidence of racial discrimination."). As evidence that Grasso's dislike was based on a discriminatory animus, Bojd argues that (1) Grasso previously recommended his termination without justification; (2) some of the incidents in Grasso's November 26, 2001 memo concerning his termination occurred after Grasso's second recommendation; (3) other employees of foreign descent were poorly treated; (4) in August 2001,

5

Grasso delayed his training; (5) Grasso pushed to replace him on water resource projects; and (6) Grasso attempted to interfere with projects and cause clients to incur unauthorized expenses. As discussed below, only the latter two reasons could possibly support a reasonable inference of discrimination in this case.

Bojd's initial problems with Grasso cumulated in a meeting attended by Bojd, Grasso, and Deardorff in February 2001. Although Grasso had recommended terminating Bojd at that time, the facts of this case undermine a reasonable inference that, following this recommendation, Grasso was merely waiting for an excuse to terminate Bojd. Bojd's conclusory assertion that the recommendation was unjustified is not supported by the evidence, which shows that Golder sincerely believed that there were problems between Grasso and Bojd. In addition, Grasso and Deardorff attempted to resolve the issues between Bojd and Grasso, Bojd and Grasso agreed to start with a clean slate and work together, Grasso testified that this worked for a time, Bojd stated that he did his best to work with Grasso and things went pretty well, and Richard Zwolak, the former Tampa office manager and a senior staff member at the Tampa office, corroborated Bojd's improved working relationships. However, Zwolak also testified that Bojd's effort diminished over time, which is consistent with Grasso's testimony that, although things initially went well, they got to a point where he could not stand it.

6

Grasso's November 26, 2001 memo cited a number of examples of Bojd's "total disregard, open defiance and complete lack of respect for management authority and decision making responsibilities." The occurrence of some of these incidents after Grasso initially renewed his recommendation does not raise a reasonable inference that Grasso was attempting to cover up a discriminatory reason.[1] The incidents were cited as specific examples of continuing problems and not independent reasons for Bojd's termination. Unlike Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 467 (2d Cir. 1989), upon which Bojd relies, where the evidence could show that the defendant did not treat other employees the same as the plaintiff until after consultation with its attorney, Grasso was not taking additional actions to mask an earlier decision, rather he was describing additional actions allegedly committed by Bojd. Although Bojd denied the truth of some of the allegations by his co-workers, he makes no argument and offers no evidence that Grasso or Deardorff did not believe that these allegations were true. See Vessels, 408 F.3d at 771 (holding that dispute as to whether incidents the decision-marker relied on occurred is insufficient to establish pretext absent evidence that

---

[1] Although Bojd interprets Grasso's statement that he informed Steve Thompson, Golder's President in the United States, of his recommendation approximately a few months before the actual termination to mean that he made the renewed recommendation around August 2001, Grasso further clarified that he and Thompson discussed his October 4, 2001 memo. Thus, the meeting could not have taken place before October 4, 2001.

the decision-maker did not sincerely believe that they occurred). In addition, Deardorff, who made the ultimate decision to fire Bojd, instructed Grasso to delay the termination.

As to Grasso's treatment of other employees, we have reasoned that it is difficult to conclude that a practice affecting persons of all races in the same manner is actually designed to conceal a racially discriminatory motive. Brown v. Am. Honda Motor Co., 939 F.2d 946, 952 (11th Cir. 1991). We have also rejected a pretext argument based on the fact that the decision-maker had discriminated against a different candidate in making a prior promotion decision, noting that "courts are reluctant to consider 'prior bad acts' in this context where those acts do not relate directly to the plaintiffs." Denney v. City of Albany, 247 F.3d 1172, 1189 (11th Cir. 2001). Thus, in this case, the resignation or termination of employees during Grasso's tenure as Tampa office manager does not permit a reasonable inference of discriminatory animus. Grasso terminated Agusto Rodriguez (American of Hispanic descent, Catholic), Maria Scharaldi (white, unknown national origin or religion), Nancy DePaul (white, unknown national origin or religion), and Craig Toehill (unknown national origin or religion). Among the reasons Grasso terminated Scharaldi were Scharaldi's poor behavior and inability to work with others. In addition, Grasso subsequently sought to

rehire Rodriguez as a contractor. Among the employees who resigned were Alex Ghafari (Lebanese, Christian), Chen (Chinese, non-religious), and Allen Guins (American, unknown national origin or religion). All three had problems with Grasso. Chen also testified that six or seven people left Golder and that most of them had problems with Grasso.

As to Bojd's claim of discriminatory animus due to Grasso's delay of his training, Deardorff, not Grasso, ordered the delay. As to the remaining evidence Bojd cites – that Grasso pushed to replace him on water resource projects and attempted to interfere with projects and cause clients to incur unauthorized expenses – we hold that it is insufficient to raise a genuine issue of fact as to pretext. See Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1279 (11th Cir. 2002) (holding that a "single shred of evidence" supporting an assertion of pretext was insufficient, without more, to establish pretext). Moreover, Bojd's assertion that these incidents are indicative of Grasso's dislike of Bojd due to Bojd's national origin or religious faith is speculative. First, we question whether management decisions against one person, without an argument that similar actions were not taken against others, would permit a reasonable inference of discriminatory animus, particularly where there is evidence that a number of other people had problems with that manager. Second, the evidence demonstrates not

only a non-discriminatory reason for Grasso to dislike Bojd, but a connection between this reason and Grasso and Bojd's ability to work together. When Grasso first took the position as office manager, although both he and Bojd had concerns about each other, Chen testified that Grasso and Bojd worked together well for a few months, which was about the time that the major issue Bojd had with Grasso arose. In addition, after the February 2001 meeting, Grasso and Bojd admitted to an improved working relationship. Zwolak testified that, for a period of time after the meeting, Bojd exhibited good working relationships but that his effort diminished over time. Grasso further explained that it eventually got to the point where he could not tolerate it.

In light of the foregoing, Bojd has failed to demonstrate substantially probative evidence of pretext. Accordingly, the district court's grant of summary judgment in favor of Golder is

**AFFIRMED.**